**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT ADAM McGUFFEY, | 3:16-cv-00356-MMD-VPC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| TRAVIS BENNETTE, *et al.,* | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (ECF No. 32).  Plaintiff opposed (ECF No. 38), and defendants replied (ECF No. 39).  For the reasons stated below, the court recommends that defendants' motion for summary judgment (ECF No. 32) be granted.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Robert Adam McGuffey ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC").  Although currently housed at Stewart Conservation Camp ("SCC"), the events that give rise to this action transpired at Lovelock Correctional Center ("LCC").  (ECF No. 13; *See* Def. Exh. A.)  Pursuant to 42 U.S.C. § 1983, plaintiff brings a Count I Eighth Amendment conditions of confinement claim and a Count II First Amendment retaliation claim.  (ECF No. 12 at 10.)  Plaintiff sues Correctional Officer Travis Bennett ("Bennett"), Correctional Officer Danny Harlow ("Harlow"), Case Worker Kelly Belanger ("Belanger"), Sergeant Todd Gilliland ("Gilliland")[1], Associate Warden Tara Carpenter ("Carpenter"), and Associate Warden William Sandie ("Sandie").  (ECF No. 13.)

---

[1]  In screening plaintiff's complaint, the Court interpreted the body of the complaint as identifying Gilliland and Carpenter as defendants.  (ECF No. 12 at 10 n. 3.)

According to plaintiff's complaint, the alleged events giving rise to plaintiff's claims are as follows.  On February 10, 2016, plaintiff was transferred from Humboldt Conservation Camp ("HCC") to LCC pending disciplinary proceedings brought against him for fighting another inmate. (ECF No. 13 at 7; Def. Exh. B at 2.)  During an administrative segregation hearing with Belanger, plaintiff denied his involvement in the fight at HCC.  (ECF No. 13 at 7.)  Belanger called plaintiff a liar and the two became "hostile and disrespectful" toward each other.  (*Id.*).  Later, Harlow took plaintiff to the yard and told plaintiff that the rumor was that plaintiff liked to be disrespectful and argumentative with the female staff. (*Id.*) Harlow told plaintiff, "Welcome to United States of Lovelock, we have our own ways of dealing with guys like [plaintiff]."  (*Id.*)  When Bennett retrieved plaintiff from the yard, he told plaintiff that they had searched plaintiff's room and confiscated several "altered" items as unauthorized, despite plaintiff's assertions that he did not own altered items. (*Id.*)

Bennett also told Plaintiff that requesting to go to the yard was the wrong thing to do, and when plaintiff returned to his cell, he discovered that prison officials had destroyed his whole room. (*Id.* at 8–9.)  Within fifty days, plaintiff's cell had been searched fourteen times, forcing plaintiff to forego exercise in the yard in order to prevent excessive search of his cell.  (*Id.* at 14.)  Bennett warned plaintiff that "this is what happens when inmates write grievances or go to yard," and three other inmates cautioned plaintiff against filing any grievances against the correctional officers.  (*Id.* at 10, 12–13.)

Finally, plaintiff alleges that Carpenter and Gilliland were part of Belanger, Bennett, and Harlow's conspiracy to retaliate against plaintiff.  (*Id.* at 19.)  Gilliland found plaintiff guilty of one of the false notice of charges and tried to persuade plaintiff to plead guilty to other charges that plaintiff did not commit. (*Id.* at 18-19.)  Carpenter repeatedly denied plaintiff's grievances on procedural grounds, doing so "intentionally to chill and stop the [grievance] process." (*Id.* at 12–13.)

1       On February 16, 2017, the District Court screened plaintiff's complaint and allowed

2   plaintiff to proceed on two counts: his Count 1 Eighth Amendment conditions of confinement claim

3   against Bennett, Harlow, and Belanger; and his Count II First Amendment retaliation claim

4   Bennett, Harlow, Belanger, Carpenter, and Gilliland.  (ECF No. 12 at 10–11.)  Defendants filed

5   their motion for summary judgment on the grounds that plaintiff's claims are moot.  (ECF No. 32

6   at 2.)  Defendants also argue that plaintiff has failed to properly exhaust administrative remedies

7   prior to filing his complaint.  (*Id.*)  Plaintiff opposed, (ECF No. 38), and defendants replied, (ECF

8   No. 39).  This report and recommendation follows.

9   **II.    LEGAL STANDARD**

10      Summary judgment allows the court to avoid unnecessary trials.  *Nw. Motorcycle Ass'n v.*

11  *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly grants summary

12  judgment when the record demonstrates that "there is no genuine issue as to any material fact and

13  the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

14  330 (1986).  "[T]he substantive law will identify which facts are material.  Only disputes over

15  facts that might affect the outcome of the suit under the governing law will properly preclude the

16  entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be

17  counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" only

18  where a reasonable jury could find for the nonmoving party.  *Id.*  Conclusory statements,

19  speculative opinions, pleading allegations, or other assertions uncorroborated by facts are

20  insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984

21  (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).  At this stage,

22  the court's role is to verify that reasonable minds could differ when interpreting the record; the

23  court does not weigh the evidence or determine its truth.  *Schmidt v. Contra Costa Cnty.*, 693 F.3d

24  1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

25      Summary judgment proceeds in burden-shifting steps.  A moving party who does not bear

26  the burden of proof at trial "must either produce evidence negating an essential element of the

27  nonmoving party's claim or defense or show that the nonmoving party does not have enough

28

evidence of an essential element" to support its case.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts.  *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party.  *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).  "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . .  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *Id.* (citations omitted).  The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution.  *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III.    DISCUSSION

**A.    Failure to Exhaust Administrative Remedies**

      **1.    Exhaustion under the PLRA**

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.

1    Failure to exhaust is an affirmative defense.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  The

2    defendant bears the burden of proving that an available administrative remedy was unexhausted

3    by the inmate.  *Albino*, 747 F.3d at 1172.  If the defendant makes such a showing, the burden shifts

4    to the inmate to "show there is something in his particular case that made the existing and generally

5    available administrative remedies effectively unavailable to him by 'showing that the local

6    remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'"

7    *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

8         **2.**       **NDOC's Inmate Grievance System**

9    Administrative Regulation ("AR") 740 governs the grievance process at NDOC institutions.

10    An inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level.

11    (*See* Def. Exh. G.)  The inmate may file an informal grievance within six months "if the issue

12    involves personal property damages or loss, personal injury, medical claims or any other tort

13    claims, including civil rights claims."  (*Id.* at 6.)  The inmate's failure to submit the informal

14    grievance within this period "shall constitute abandonment of the inmate's claim at this, and all

15    subsequent levels."  (*Id.* at 7.)   NDOC staff is required to respond within forty-five days.  (*Id.* at

16    8.)  An inmate who is dissatisfied with the informal response may appeal to the formal level within

17    five days.  (*Id.*)

18    At the first formal level, the inmate must "provide a signed, sworn declaration of facts that

19    form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional

20    relevant documentation."  (*Id.*)  The grievance is reviewed by an official of a higher level, who

21    has forty-five days to respond.  (*Id.* at 9.)  Within five days of receiving a dissatisfactory first-level

22    response, the inmate may appeal to the second level, which is subject to still-higher review.  (*Id.*)

23    Officials are to respond to a second-level grievance within sixty days, specifying the decision and

24    the reasons the decision was reached.  (*Id.*)  Once an inmate receives a response to the second-

25    level grievance, he or she is considered to have exhausted available administrative remedies and

26    may pursue civil rights litigation in federal court.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.    Exhaustion of Plaintiff's Claims

Defendants argue that plaintiff did not properly exhaust his available administrative remedies for his claims because he failed to follow the grievance procedure outlined by AR 740. (*See* ECF No. 32 at 6–8.)  Specifically, defendants contend that plaintiff filed procedurally defective grievances at the informal and first level of review, which he failed to cure and resubmit upon rejection.  (*Id.* at 7.)  Moreover, defendants argue that plaintiff failed to file a second level grievance before commencing this action.  (*Id.*; *see also* Def. Exh. F.)  Plaintiff disputes that his informal and first level grievances were procedurally defective.  (ECF No. 38 at 13–14.)  It may be true that plaintiff's informal grievance contained a single issue of retaliation and was improperly rejected for having "two or more appropriate issues."  (*See* Def. Exh. F at 8–19; Def. Exh. G at 9.)  The court need not weigh in, however, as plaintiff's first level grievance violated AR 740.06(2) by failing to include facts supporting "his claim that the informal response is incorrect."  (Def. Exh. G at 6.)  Rather, plaintiff's first level grievance concludes without explanation that his informal grievance contained "only [one] issue with 'multiple incidents,'" followed by a two-page ad hominem against the grievance responder, Carpenter.  (Def. Exh. F at 2–3.)  Despite plaintiff's incendiary language, Carpenter provided plaintiff an opportunity to resubmit his first level grievance with a factually supported explanation that comports with AR 740.06(2).  (*Id.* at 1.)  Plaintiff provides no evidence that he attempted to cure this deficiency as directed.  Therefore, the court finds that defendants have carried their burden of establishing that plaintiff failed to exhaust his administrative remedies pursuant to AR 740 prior to initiating this action. *Woodford*, 548 U.S. at 90 (exhaustion demands compliance with "all the steps the agency holds out, and doing so properly").  Plaintiff's second level grievance is of no moment because plaintiff abandoned his claim at the first level.  (Def. Exh. G at 9) ("[t]he inmate's failure to re-submit the grievance in the proper form … shall constitute abandonment").

The burden now shifts to plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of*

1    *Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)).  Plaintiff appears to argue that he was deprived

2    of the technical assistance of a caseworker when drafting his grievance because his grievance

3    2006-30-19014 raised allegations against the caseworker, Belanger.  (ECF No. 38 at 13.)  From

4    what the court can discern, this grievance does not pertain to plaintiff's claims currently before the

5    court and is irrelevant to whether administrative remedies were unavailable.  (*See* Plaintiff's Exh.

6    Q.)  Moreover, plaintiff fails to cite to any applicable law or regulation requiring that inmates have

7    the assistance of a caseworker in crafting their grievances, or that administrative remedies are

8    effectively unavailable when caseworkers are unavailable to assist inmates.

9         Additionally, plaintiff asserts that grievance responders repeatedly rejected plaintiff's

10   grievances on procedural grounds "intentionally to chill and stop the process."  (ECF No. 38 at

11   12–13.)  The Supreme Court has held that administrative remedies are unavailable "when prison

12   administrators thwart inmates from taking advantage of a grievance process through machination,

13   misrepresentation, or intimidation."  *Ross v. Blake*, 136 S. Ct. 1858, 1860 (2016).  This occurs

14   when prison officials devise a procedural system to "trip[ ] up all but the most skillful prisoners"

15   or by misleading or threatening inmates "so as to prevent their use of otherwise proper

16   procedures."  *Woodford*, 548 U.S. at 102.

17        Here, plaintiff has not met his burden of showing that AR 740 contains "blind alleys and

18   quagmires" that prevented him from exhausting his grievances, nor does he show that prison

19   officials enforced AR 740 in such a way.  *Ross*, 136 S. Ct. 1860.  Instead, the official responses to

20   plaintiff's informal and first level grievances identified the specific provision of AR 740 that

21   plaintiff's grievances violated and provided plaintiff an opportunity to amend these defects so that

22   his claims could be reviewed on the merits.  On the record before the court, there is no indication

23   that plaintiff took the opportunity to amend his grievances as directed.  The "facts on the ground"

24   do not demonstrate that plaintiff had no potential for obtaining relief.  *See Ross*, 136 S. Ct. at 1860-

25   61.  Indeed, plaintiff's numerous emergency grievances filed after the submission of his complaint

26   indicate that his difficulties with the procedural requirements of AR 740 did not dissuade him from

27   believing that remedies were available.  (Plaintiff's Exh. G.)

28

While it is clear plaintiff disagrees with the requirement to exhaust his administrative remedies, exhaustion plays a very important role in both the prison and court settings. "Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" *Id.* at 89 (quoting *McCarthy v. Madigan,* 503 U.S. 140, 145 (1992)). Exhaustion also "promotes efficiency." *Id.* Plaintiff failed to exhaust his administrative remedies through all levels of the grievance process and, in so doing, prevented prison officials from "reach[ing] the merits of the issue." *Griffin*, 557 F.3d at 1119. He does not present any evidence that such remedies were effectively "unavailable." *Id.* Accordingly, the court recommends that defendants' motion for summary judgment be granted because plaintiff failed to exhaust administrative remedies prior to filing this action.

## IV.    CONCLUSION

For the foregoing reasons, defendants have met their burden of proving that plaintiff failed to exhaust available administrative remedies as to both his Count I Eighth Amendment claim and his Count II First Amendment retaliation claim. The court finds that plaintiff did not meet his burden of providing "evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (internal quotations omitted). Thus, the court recommends that defendants' motion for summary judgment should be granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.      RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (ECF No. 32) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: January 9, 2018.

**UNITED STATES MAGISTRATE JUDGE**